IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | CASE NO. 1:14 CR 341-PAG-003 |
| Plaintiff, ) | |
| ) | JUDGE PATRICIA A. GAUGHAN |
| v. ) | |
| ) | |
| JUSTIN MAXWELL, ) | |
| ) | |
| Defendant. | |

DEFENDANT'S SENTENCING MEMORANDUM
(DOWNWARD DEPARTURE/VARIANCE REQUESTED)

In anticipation of sentencing on September 2, 2015, Defendant Justin Maxwell, through counsel, respectfully submits the following Sentencing Memorandum.

I.  Introduction

Justin Maxwell stands convicted by a jury on Count 2 of conspiracy to possess with intent to distribute and to distribute cocaine in violation of Title 21 U.S.C. §§846 and 841(b)(1)(A)(which carries a mandatory minimum sentence of ten (10) years imprisonment), Count 5 of use or carrying a firearm during and in relation to a controlled substance offense in violation of Title 18 U.S.C. §924(c), which carries a mandatory consecutive sentence of 60 months imprisonment, and Count 10 of being a felon in possession of a firearm in violation of Title 18 U.S.C. §922(g)(1), which carries a statutory maximum sentence of ten years imprisonment.

For the following reasons, Justin Maxwell respectfully requests that the Court disregard the statutory mandatory minimum sentence on Count 2 due to the government's sentencing manipulation of the quantity of cocaine and because, under the circumstances of this case, imposition of a mandatory minimum sentence of ten (10) years violates the Eighth Amendment's proscription against cruel and unusual punishment.

Rather, Justin Maxwell respectfully requests that the Court sentence him on Count 2 to the mandatory minimum sentence of five (5) years provided for in Title 21 U.S.C. §841(b)(1)(B) based upon the quantity of 4-4.5 kilograms of cocaine, which carries a statutory mandatory minimum sentence of five (5) years imprisonment. Justin Maxwell respectfully requests that the Court sentence him on Count 5 to the mandatory consecutive term of five (5) years, and that the Court sentence him on Count 10 to a term of imprisonment of five (5) years to run concurrently with the sentences imposed on Counts 2 and 5.

II.     Sentencing Factors

Title 18 U.S.C. §3553 (a) provides in part that district courts "shall impose a sentence *sufficient, but not greater than necessary,* to comply with the purposes set forth in paragraph (2) of this subsection." (emphasis added). Those purposes are the need for the sentence imposed: A) to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment for the offense; B) to afford adequate deterrence to criminal conduct; C) to protect the public from further crimes of the defendant; and D) to

provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. §3553(a)(2).

In determining the particular sentence to be imposed, Section 3553(a), instructs the Court to consider the following factors: 1) the nature and circumstances of the offense conduct and the history and characteristics of the defendant; 2) the need for the sentence imposed in light of the above purposes of federal sentencing; 3) the kinds of sentences available; 4) advisory sentencing guidelines and applicable sentencing range; 5) the advisory sentencing guideline policy statements; and 6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. In summary, the Court is to exercise its sound discretion to impose a reasonable sentence considering the multiple factors in Section 3553(a).

III.  Application of the Sentencing Factors to Justin Maxwell

   A.  The History and Characteristics of the Defendant

Justin Maxwell is 27 years old. He was raised by his mother and, since he was 5-6 years old, his stepfather. He had a tumultuous childhood. His biological father was murdered when he was 8 months old. He grew up in poverty and his family had to rely on government assistance to survive. There were times as a child when he had to go without meals, times when the utilities in the home were turned off, and he often shared clothing with his siblings. He lived in public housing in neighborhoods where he was exposed to violence and illegal drug activity. As noted in the PSR at Paragraph 58, he was abused by a babysitter when he was 7 or 8 years old. In 2006, his family

3

was evicted and Justin lived with a cousin for a time. His stepfather was imprisoned for 18 months for drug activity during Justin's childhood.

Although he was never diagnosed with a learning disability nor received special education classes, Justin struggled in school and often received failing grades. He dropped out after completing the 10th grade and sought work. He abused marijuana, alcohol and ecstacy as a teenager until he was 21 years when he went to prison. Justin unsuccessfully attempted to obtain his GED on multiple occasions, and has twice failed the math examination. However he has continued his efforts to obtain his GED by taking classes in the Ashtabula County Jail following trial in this case. (See PSR at ¶65).

Justin has two children from a ten year long relationship with his girlfriend beginning when Justin was 17 years old. His daughter is 6 years old. His son is 8 months old and was born without a left hand. He has a close relationship with his daughter, was active in her life, and often cared for her prior to his arrest. He has worked to support his children, most recently working as a laborer for his uncle until his was arrested in this case. He previously worked as a metal scrapper between 2008 and 2009 until the company went out of business and before that as a vendor at Jacob's Field in 2007.

Although Justin has a significant criminal history, he has no prior drug trafficking convictions; his only prior drug related conviction was for drug abuse of marijuana in 2007 when he was 19 years old. He has a *single prior felony conviction*

4

which occurred in 2009, Cuyahoga Case No. 09 CR 528570. He was initially charged with aggravated robbery under R.C. 2911.01(A)(1) with a 3-year firearm specification under R.C. 2941.145 and a 1-year firearm specification under R.C. 2941.141. Count I of the indictment was amended to delete the 3-year firearm specification, which under R.C. 2941.145. Justin pleaded guilty to aggravated robbery with a 1-year firearm specification under R.C. 2941.141 for having a firearm on or about his person or under his control while committing the offense, and the remaining counts were dismissed. Justin was *not* convicted of the deleted 3-year firearm specification under R.C. 2941.145 which involves the additional conduct of displaying, brandishing, indicating possession of the firearm or using it to facilitate the offense. Justin was sentenced to 3 years on the underlying charge and an additional 1 year for the firearm specification for a total of 4 years. (Ex. A, Journal Entry filed 11/16/09).

As reflected in the attached letters, Justin has a very supportive relationship with his family. (Ex. B, E. Maxwell Letter; Ex. C, V. Maxwell Letter; Ex. D, T. Maxwell Letter; Ex. E, D. Maxwell Letter). At the time of arrest in this case, he was living with his mother and prior to that he lived with his girlfriend. As described by his uncle, "Justin is a very mild mannered and soft spoken guy" who "is also a good worker when given a task." (Ex. B, E. Maxwell Letter). He notes how much Justin cares for his children and how Justin took the time to spend with his daughter and learned to curl and braid her hair. (Ex. B, E. Maxwell Letter). Justin's uncle also observed how susceptible Justin was to peer pressure, how much he sought out acceptance of other

5

males, how he wanted to be liked and loved, yet how it had a negative and destructive impact on his life. (Ex. B, E. Maxwell Letter). Although Justin was trying to be a productive and responsible young man upon his release from state prison, Justin made bad choices, which he deeply regrets, based on the negative influences of those he considered friends. (Ex. B, E. Maxwell Letter).

A. The Nature and Circumstances of the Offense

At trial, the government presented evidence that ATF Special Agent Richard Zayas proposed to the defendants a plot to steal 8-9 kilos of fictional cocaine from a fictional stash house to be divided with one half to the agent and the other half to the defendants. On each occasion when he presented the fictional stash house scenario to the defendants, Agent Zayas proposed that the robbery proceeds (8-9 kilos of cocaine) would be split equally – half for the defendants collectively, and the other half for him. Agent Zayas was to be present during the robbery, entering the stash house first under the guise of his role as the courier for the cartel. Agent Zayas' communications with the defendants were recorded and admitted into evidence at trial. At no time did Agent Zayas and any of the defendants discuss that the defendants would take the entire 8-9 kilos of cocaine and distribute half of it back to Agent Zayas at a later time. Rather, as proposed by Agent Zayas, the defendants would receive half of the cocaine in the stash house. There was no evidence of any discussion or agreement between the defendants that would indicate otherwise.

6

Justin Maxwell was not engaged in any criminal activity immediately before the offense conduct, and he was recruited by co-defendant Alexander to participate in the robbery. He met with Agent Zayas and Alexander on September 2, 2014, and again met with Agent Zayas the next day, September 3, 2014, when the CI drove each of the defendants from Grandpa's Kitchen on the east side of Cleveland to a CVS Pharmacy parking lot on the west side to meet Zayas. As the Court may recall from the video recordings, Justin said very little on the ride from Grandpa's to the CVS and did not say anything on the ride from CVS to the takedown area.

There was no evidence that Justin had a gun before he got into the CI's car, and in his post arrest statement, Justin stated that he received the gun after he entered the CI's car. Moreover, there was no evidence that Justin made any statement at any time to suggest that he was willing to or intended to shoot anyone. Moreover, he gave no indication that he agreed with any such statements by any other co-defendant.

Finally, as the Court will recall, Agent Demas testified that Justin gave a post arrest statement in which he was cooperative, truthful and indicated that he participated in the robbery plan, but also that he had been reluctant to do so.

B.  <u>Objection to Imposition of the Ten Year Mandatory Minimum on Count 2</u>

The defendant objects to imposition of a mandatory minimum ten (10) year sentence on Count 2.

1. <u>The Government Engaged in Sentencing Entrapment & Manipulation</u>

The government's conduct in establishing the quantity of 8-9 kilograms of cocaine constitutes sentencing entrapment and sentence manipulation. The Sixth Circuit has not decided whether to adopt or reject these doctrines. *United States v. Hammadi*, 737 F.3d 1043 (6th Cir. 2013); *United States v. Strickland*, 342 Fed.Appx. 103, 2009 U.S. App. LEXIS 18021 (6th Cir. August 12, 2009). However, in *Hammadi*, the Sixth Circuit explained that "defendants pursuing the mitigating theories argue that, but for outrageous government conduct, the defendant would have committed only a less serious crime. Sentencing entrapment is similar to the subjective theory of entrapment and "'focuses on the defendant's lack of predisposition to commit the greater offense.' Sentencing manipulation, in contrast, tracks the objective theory of entrapment and 'focuses on the [g]overnment's conduct.' Under either theory, the defendant bears the burden of proof as to his lack of predisposition and to the outrageousness of the government conduct." 737 F.3d at 1048.

> Sentencing factor manipulation occurs when "the government `improperly enlarges the scope or scale of a crime' to secure a longer sentence than would otherwise obtain." *United States v. DePierre*, 599 F.3d 25, 28-29 (1st Cir. 2010)(quoting United States v. Vasco, 564 F.3d 12, 24 (1st Cir. 2009))… "Impropriety is the main focus." *Id.* at 29. A finding of manipulation allows imposition of a reduced sentence as an equitable remedy to the government's overreaching. Id.; *United States v. Sanchez-Berrios*, 424 F.3d 65, 78 (1st Cir. 2005); *United States v. Fontes*, 415 F.3d 174, 180 (1st Cir. 2005).

*West v. United States*, 631 F.3d 563 (1st Cir. 2011).

The Sixth Circuit in *Hammadi* declined to apply the doctrines because the defendant was foreclosed from doing so based on his guilty plea. The Court further distinguished the facts before it, a material-assistance case, from a drug case:

> For example, if the CHS encouraged Hammadi to transport a particular number of Stinger missles to trigger a mandatory minimum, then Hammadi might be able to invoke one of the mitigation theories and cite U.S.S.G. §2D1.1 cmt. n. 27(A)[formerly 26(A)]. This application note allows a court to depart downward from the guidelines-recommended sentence if a drug defendant can prove that the government agent intentionally manipulated the quantity of drugs exchanged with the purpose of triggering a larger sentence. Id. Importantly, in drug cases, the amount of drugs possessed, manufactured, or sold determines the length of the sentence. See, e.g., 21 U.S.C. §841(b)(1)(A)(mandatory ten-year minimum sentences based on weight of certain drugs). In material-assistance cases, such as Hammadi's, the penalties are determined largely irrespective of the amount of assistance. Furthermore, it is unclear whether sentencing entrapment as a concept makes sense outside the drug context.

737 F.3d at 1048, n. 1.

In this case, the only claimed basis for the quantity of 8-9 kilograms of fictitious cocaine set by the ATF undercover agent was SA Johnson's alleged consultation with a Cleveland DEA agent who was not involved in the investigation. None of the agents involved in the investigation were familiar with the typical quantity of cocaine recovered from drug stash houses in Cleveland. Further, this alleged consultation was nowhere documented and was otherwise unsupported.

Moreover, on each occasion in this case, the ATF undercover agent represented to the defendants that the robbery proceeds, 8-9 kilograms of cocaine, would be split equally, half to the agent and half to the defendants. Based on the undercover agent's

representations, the most that defendant Justin Maxwell could have believed the defendants stood to possess with the intent to distribute was 4 to 4.5 kilograms.

Moreover, Justin Maxwell was not predisposed to commit a drug trafficking offense, particularly one involving 8-9 kilos. He was not engaged in drug trafficking and has no prior conviction for any drug trafficking offense. Nor is there any evidence that he engaged in any prior drug trafficking offense or any robbery related to drug trafficking. Further, during his post arrest interview, he denied personal ability to sell the cocaine and any knowledge of cocaine pricing.

Under the circumstances of this case, imposition of the ten year mandatory minimum sentence violates fundamental fairness. Holding Justin Maxwell accountable for 8-9 kilos of cocaine to trigger the 10 year mandatory minimum penalty, particularly in light of the government's bargain with the defendant for half that amount, overstates his criminal culpability and condones the improper tactic used by the government in this case designed to secure a longer mandatory prison term.

2.  <u>The Statutory Mandatory Minimum Violates the Eighth Amendment</u>

In this case, a mandatory minimum sentence of ten years imprisonment violates the defendant's right against cruel and unusual punishment. As applied to the circumstances of this particular case, a mandatory minimum sentence of ten years is disproportionate, if not grossly disproportionate, to the real offense conduct attributable to Justin Maxwell. The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

In *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133 (1980), the United States Supreme Court recognized the potential for a proportionality rule to come into play for both capital in non-capital cases. In 1983, the United States Supreme Court decided *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001 (1983), setting aside a sentence of life imprisonment without parole under a South Dakota three-strikes statute as grossly disproportionate.

In 1991, a sharply divided Supreme Court held that the Eighth Amendment does not contain a strict proportionality guarantee in non-capital cases and that the sentencing judge need not take into account the circumstances surrounding the defendant's particular crime and background before imposing a mandatory sentence. *Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680 (1991). Justice Scalia essentially, and wrongly, concluded that mandatory minimum penalties were not unusual in the constitutional sense because they have been frequently and extensively used throughout history. Justices Kennedy, O'Connor and Souter concurred in part, finding that a narrow proportionality principle applied in non-capital cases, and that the Eighth Amendment prohibits sentences that are grossly disproportionate to the crime. The strong dissent, led by Justice White, advanced that the Eighth Amendment requires a proportionality review in mandatory minimum cases as well as capital cases.

More recently, in Miller v. Alabama, __ U.S. ___, 132 S.Ct. 2455 (2012), the United States Supreme Court applied the requirement of proportionality review to a case in which a juvenile was subject to a mandatory life sentence without parole. The Court held that the

Eighth Amendment forbids a sentencing scheme that mandated life in prison without the possibility of parole for juvenile offenders without consideration of mitigation factors.

In this case, Justin Maxwell faces a mandatory ten year minimum sentence on Count 2 based upon the government agent's creation of an amount of fictional cocaine, the object of the robbery proposed by the government, exceeding the threshold to exact a mandatory minimum ten year penalty under Title 21 U.S.C. §841(b)(1)(A). The defendant respectfully submits that proportionality review is required by the Eighth Amendment in this case where the defendant is subject to a mandatory minimum sentence due to the Government's conduct in artificially establishing the quantity of fictional cocaine at 8-9 kilograms, yet bargaining with the defendant for half of that amount for his participation in the crime. Indeed, Justin Maxwell had no basis upon which to expect that he and his co-defendants would obtain more than 4-4½ kilograms based on the government's representations. Under the scenario created by the government, Justin Maxwell conspired to possess with intent to distribute no more than that amount.

As applied to the circumstances of this case, a mandatory minimum sentence of ten years imprisonment is grossly disproportionate to Justin Maxwell's conduct, culpability, and other factors that this Court is required to consider at sentencing, particularly the fact that he has no prior drug trafficking history, and violates his Eighth Amendment right against cruel and unusual punishment.

B.  The Advisory Sentencing Guidelines

Based upon the quantity of 8-9 kilograms of cocaine, the advisory Sentencing Guidelines base offense level is 30. There are no adjustments as to Justin Maxwell. At total offense level 30 and Criminal History Category III, the advisory sentencing guideline range is 121-151 months imprisonment as to Counts 2 and 10.

However, as discussed above, the defense respectfully submits that the government's conduct in establishing the quantity of 8-9 kilograms of cocaine constitutes sentencing entrapment and manipulation. Therefore, the defendant objects to the guideline calculation and the resulting sentencing range of 121-151 months.

Alternatively, the defendant submits that a downward departure or variance is appropriate. By analogy, the defendant directs the Court's attention to U.S.S.G. §2D1.1, Application Note 27(A) which states:

> Departure Considerations.—
>
> (A)  Downward Departure Based on Drug Quantity in Certain Reverse Sting Operations.—If, in a reverse sting (an operation in which a government agent sells or negotiates to sell a controlled substance to a defendant), the court finds that the government agent set a price for the controlled substance that was substantially below the market value of the controlled substance, thereby leading to the defendant's purchase of a significantly greater quantity of the controlled substance than his available resources would have allowed him to purchase except for the artificially low price set by the government agent, a downward departure may be warranted.

In Application Note 27(A), the Sentencing Commission acknowledges that a downward departure may be warranted where the government's conduct in manipulating the price of the controlled substance in a reverse sting can artificially increase the quantity that

13

the defendant would have otherwise bargained for. The same concept applies in the instant case, and the point is that it is the *government's* conduct which results in the larger quantity. In the example in Application Note 27, the government's conduct in setting an artificially low price creates the basis for the defendant's bargain for a higher quantity of drugs. Here, the Agent set an artificial quantity of 8-9 kilograms of cocaine in the fictional stash house, yet the defendant bargained for, at most, half of that amount. Justin Maxwell had no basis to expect that the defendants would obtain any greater quantity from his participation.

In the particular scenario before the Court, the government presented the defendant with a fictitious stash house robbery of 8-9 kilograms of cocaine and bargained that the defendants would receive half of that amount. To permit the government to bargain with the defendant for a lesser quantity, yet hold the defendant accountable for the entire fictional amount of cocaine creates the same inequity that the Application Note is designed to address – the government's conduct in artificially increasing the quantity for which the defendant is to be held accountable.

    C.    The Requested Sentence Serves the Purposes of Federal Sentencing

The Court is tasked with imposing a sentence sufficient *but not greater than necessary* to serve the purposes of federal sentencing. Those purposes are to reflect the seriousness of the offense, to promote respect for the law, to impose just punishment, to afford adequate deterrence, both general and specific, and to provide the defendant with necessary training, care or treatment in the most effective manner. In determining the

sentence, the Court shall also consider the need to avoid unwarranted sentencing disparities and the need to provide restitution.

In this case, the need to reflect the seriousness of the offense, to impose just punishment and to promote respect for the law in light of the circumstances would be well served by the requested sentence. Justin has been convicted of serious offenses. However, he was clearly recruited by Alexander, someone whose approval and affection he sought due to his immaturity. He did not obtain a weapon on his own to bring to the potential robbery, although he received and possessed a firearm once inside the CI's car. He made no threats of violence, no statements indicating he intended any violence, and he engaged in no violence. He acknowledged participation in the planned robbery and cooperated in his post arrest statement to the agents.

Justin's conduct in this case is inconsistent with his personal history – he has no prior convictions for any drug trafficking crimes nor was his prior robbery offense related to drugs. He was attempting to become a responsible and productive member of society upon his release from state prison a year earlier, and he had been working as much as he could and spending time caring for his daughter.

For the same reasons as set forth above, the need to afford adequate general deterrence for the type of criminal conduct in this case under the circumstances particular to Justin Maxwell is satisfied by the requested sentence.

IV.  CONCLUSION

For the reasons set forth above, Justin Maxwell, respectfully requests that the Court sentence him to a term of 60 months on Count 2, 60 months on Count 5 to run consecutively, and 60 months on Count 10 to run concurrently. He needs no further punishment or deterrent, and any greater sentence would be more than necessary to satisfy the objectives of federal sentencing.

>Respectfully submitted,
>
>s/ Joan E. Pettinelli
>Joan E. Pettinellli, Esq., (0047171)
>Wuliger, Fadel & Beyer, LLC
>1340 Sumner Avenue
>Cleveland, Ohio 44115
>216.781.7777 (telephone)
>216.781.0621 (fax)
>joanepettinelli@wfblaw.com

## CERTIFICATE OF SERVICE

A copy of the foregoing was filed electronically on August 26, 2015. Notice of this filing will be sent to all counsel indicated on the electronic receipt by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

> s/ Joan E. Pettinelli
> Joan E. Pettinelli, Esq. (0047171)